OPINION OF THE COURT
■ Shirley Werner Kornreich, J.
Pending before the court are motions and cross motions for summary judgment in related actions concerning a defunct private investment hedge fund, Lipper Convertibles, L.E, and certain related entities. Plaintiff Richard A. Williamson is the successor liquidating trustee (trustee) appointed by the court (Moskowitz, J.) in Lipper Convertibles’ liquidation proceeding (In the Matter of the Application of Lipper Holdings, LLC, case No. 603563/2002). By way of these actions, the trustee seeks to recover distributions wrongfully paid to defendant limited partners at the time of their respective withdrawals from-the fund.
The motions filed by the trustee seek partial summary judgment as to liability against the following defendants: Sylvester Stallone, index No. 602395/04 (sequence No. 02); University of Minnesota Foundation, index No. 604305/04 (sequence No. 03); Arbitrage Select Fund, L.E, Armand Marciano and LMF Investment Partnership, index No. 600593/06 (sequence No. 03); and RLH Family Fund, Richard Hirsch and James F. Hoge, Jr., index No. 100827/04 (sequence No. 005).
The trustee also seeks summary judgment and dismissal of counterclaims by Marciano and Arbitrage for fraud and unjust enrichment, by Marciano for negligent misrepresentation, by *741 RLH Family Fund and Hirsch for false representations, and by the University of Minnesota Foundation for unjust enrichment and for recovery of moneys retained in their capital account. All defendants have filed cross motions for summary judgment. In support of their cross motions and in opposition to the trustee’s motions, defendants filed a joint Rules of the Commercial Division of the Supreme Court rule 19-a (22 NYCRR 202.70 [g]) statement and a joint memorandum of law.
Because the motions and cross motions involve the same subject matter and raise nearly identical issues, the court will treat them jointly for disposition. Issues that pertain to less than all the defendants will be identified and discussed separately.
I. Background
As discussed below, the court (Moskowitz, J.) and the Appellate Division, First Department, have rendered a number of decisions in related actions concerning Lipper Convertibles and related entities, which are relevant to the issues raised here. (See generally Serino v Lipper, 47 AD3d 70, 72-73 [1st Dept 2007], lv dismissed 10 NY3d 930 [2008] [describing background in context of putative class action against funds’ general partner, auditor and others]; Matter of Lipper Holdings, LLC, Sup Ct, NY County, Apr. 11, 2003, Moskowitz, J., index No. 603653/02.)
As described in those opinions and established by the motion papers submitted by the parties here, Lipper Convertibles was one of three different private investment funds (the funds) formed by Lipper & Company, L.E In October 1997, Lipper Holdings, LLC took over as Lipper Convertibles’ general partner. Edward Strafaci was executive vice-president of the general partner and was portfolio manager for the funds, including Lipper Convertibles. After the sudden departure of Strafaci and head researcher Michael Visovsky on January 14, 2002, an internal review revealed that the net asset value (NAV) of Lip-per Convertibles’ holdings had been significantly overstated. By letter dated March 26, 2002, the limited partners were notified that Lipper Convertibles’ NAV had been overstated by approximately 40% and that the decision had been made to dissolve the partnership and liquidate its holdings. Later, the percentage loss was increased to 47%.
Thereafter, Lipper Holdings hired the accounting firm BDO Seidman, LLR to recalculate the value of Lipper Convertibles’ securities from January 1, 1995 through 2001, the period of *742 overvaluation. The BDO report concluded that Lipper Convertibles’ securities portfolio was cumulatively overvalued by $329,509,000. The disclosure of the overvaluation eventually led to Lipper Convertibles’ demise.
On October 3, 2002, Lipper Holdings filed a petition for dissolution (index No. 603653/02). The petition sought court approval for the plan of distribution based on the revaluation set forth in the BDO report. By order dated April 9, 2003, the court (Moskowitz, J.) removed Lipper Holdings, the general partner, as liquidating trustee. By order dated June 27, 2003, the court appointed plaintiff Williamson as successor liquidating trustee.
On August 11, 2004, Strafaci pleaded guilty in the Southern District of New York to one count of criminal securities fraud, admitting that he knowingly, willfully and intentionally made untrue statements of material fact in connection with his valuation of the securities contained within the portfolios of Lipper Convertibles and the Series II Fund. At his sentencing on May 20, 2005, the District Court (Swain, J.) observed, “His motive in undertaking this conduct is not clear to me. It was, however, clearly not his motive simply to maximize his own financial gain.” (Transcript at 42.) In 2006, the Securities and Exchange Commission (SEC) charged Lawrence Stoler, the PricewaterhouseCoopers (PwC) partner assigned to the Lipper account, with knowingly, recklessly, and/or negligently ignoring generally accepted auditing standards and generally accepted accounting principles in conducting the 2000 audit. Stoler entered into a consent order in which the SEC found, among other things, that Stoler ignored, discounted, or failed to apprise himself of the substantial audit evidence that Strafaci’s valuations were materially overstated.
The Lipper debacle has spawned numerous lawsuits, including the individual lawsuits filed by the trustee against approximately 60 limited partner defendants seeking to “claw back” overpayments made by Lipper Convertibles based on the inflated valuations. The claw back actions against all but the eight defendants involved in the pending motions have been resolved. As to each of these defendants, the trustee makes the following allegations regarding when they withdrew as limited partners from Lipper Convertibles, and the amount of the disbursed overpayments:
Sylvester Stallone: Withdrew as of July 31, 2001. $1,333,733 overpayment.
RLH Family Fund: Withdrew in or around January 2001. $517,892 overpayment.
*743 Richard Hirsch: Withdrew in or around January 2001. $184,713 overpayment.
James F. Hoge, Jr.: Withdrew in or around January 2001. $121,241 overpayment.
LMF Investment Partnership: Withdrew in or around July 2001. $90,203 overpayment.
Armand Marciano: Withdrew in or around July 2001. $313,929 overpayment.
Arbitrage Select Fund: Withdrew in or around July 2001. $539,785 overpayment.
University of Minnesota Foundation: Withdrew in or around January 2002. $586,539 overpayment.
In 2005, the court (Moskowitz, J.) decided motions to dismiss made by former limited partners of Lipper Convertibles, none of whom is a defendant here. Justice Moskowitz denied the motions in part, sustaining the allegations of unjust enrichment and money had and received, and dismissing the claim for conversion. The court also denied defenses based on statute of limitations, in pari delicto, unclean hands and others. The defendants in those cases appealed. Defendants here recognized the potential impact of these appeals on the trustee’s claims against them and agreed to an informal stay during the pendency of the appeals. On June 19, 2007, the First Department reversed the court’s decision as to statute of limitations only, finding that the limitations period for unjust enrichment is three years. The court declined to reach any of the other issues raised on appeal. (Williamson v Culbro Corp. Pension Fund, 41 AD3d 229 [1st Dept 2007].) The Court of Appeals denied the trustee leave to appeal. (10 NY3d 702 [2008].)
In a class action suit by the funds’ limited partners, joined by the trustee, against PwC for malpractice, the court (Moskowitz, J.) partially granted PwC’s motion to dismiss the malpractice claims as time-barred. The decision was reversed by the First Department (32 AD3d 179 [1st Dept 2006]), then reinstated by the Court of Appeals (9 NY3d 1 [2007]). The claims for malpractice for audits occurring after 1999 and the fraud claims survived. In a subsequent decision, the court (Moskowitz, J.) denied PwC’s motion for summary judgment on grounds of in pari delicto. (Williamson v PricewaterhouseCoopers LLP, Nov. 14, 2007, index No. 602106/2004.) A settlement of the claims in that suit is pending for approval by the court.
On December 2, 2002, a putative class action (Serino action) was filed by former limited partners of Lipper Convertibles *744 against Lipper Holdings, Lipper L.P., Ken Lipper, Edward Strafaci, Abraham Bidermari (the comanager of Convertibles), Lawrence Block (the general counsel of Lipper L.E), Michael Visovsky (head of the fund’s research department) (collectively the Lipper defendants), and the funds’ auditor, PwC. On January 13, 2005, more than two years after the commencement of the Serino action, Lipper Holdings, Lipper L.E, Jerome Services and Ken Lipper commenced the Holdings action against PwC and its offshore affiliate. In February 2006, one year after commencing the Holdings action, the Lipper defendants asserted cross claims against PwC in Serino that were identical to causes of action they asserted against PwC in the Holdings action (i.e., fraud, negligence, malpractice, breach of contract, breach of fiduciary duty, negligent misrepresentation, contribution and/or indemnification).
A second putative class action was filed by Lipper Convertibles limited partners against Lipper Holdings and Ken Lipper, and against PwC for professional malpractice in failing to detect overvaluation of the partnership’s assets. The claims relating to excessive compensation were stayed, for reasons of judicial economy, pending resolution of the trustee’s claims against PwC, and the stay was affirmed on appeal. (Morgado Family Partners, LP v Lipper, 19 AD3d 262 [1st Dept 2005].) The First Department declined to reach the merits of the in pari delicto defense on that appeal because it was premature. However, citing federal law, the court observed that, “it is unsettled that in pari delicto can ever apply against an innocent, nonbankruptcy trustee.” (Id. at 263.)
The First Department also affirmed a May 7, 2007 order granting Lipper’s motion to compel arbitration. (Serino v Lipper, 55 AD3d 472 [1st Dept 2008].) An arbitration proceeding was held by the Financial Industry Regulatory Authority (FINRA) involving the trustee, Kenneth Lipper, Lipper Partners, L.E, Lipper & Company, L.E, and Lipper & Company, Inc. The trustee asserted claims for unjust enrichment, negligence, breach of fiduciary duty, money had and received, and constructive fraudulent conveyance. The Lipper parties asserted claims for indemnification for legal fees, declaratory judgment, money had and received, unjust enrichment, constructive trust, breach of fiduciary duty, and breach of contract. FINRA issued a March 2, 2010 award in favor of the Lipper parties and against the trustee.
*745 Thereafter, by order dated March 23, 2010, this court directed the parties to submit supplemental briefing on the following issues:
1. The impact, if any, of the March 2, 2010 arbitration award (FINRA dispute resolution, arbitration No. 07-03139, Lipper & Company, L.E v Richard A. Williamson, as Successor Liquidating Trustee on Behalf of Lipper Convertibles, cons with 08-3610) on the motions and cross motions for summary judgment pending before the court; and
2. Whether managers or members of Lipper Convertibles and the general partner were aware or should have been aware of Strafaci’s wrongful acts, whether those acts can be imputed to the partnership, and whether the partnership had an “adverse interest” to Strafaci with respect to his wrongful acts.
II. Discussion
To obtain summary judgment, a movant must establish its cause of action or defense sufficiently to warrant the court, as a matter of law, in directing judgment in its favor. (CPLR 3212 [b].) It must do so by tender of evidentiary proof in admissible form. (Zuckerman v City of New York, 49 NY2d 557, 562-563 [1980].) Once a movant has met the initial burden, the burden shifts to the party opposing the motion to establish, through admissible evidence, that judgment requires a trial of disputed material issues of fact. (CPLR 3212 [b]; Zuckerman at 560; see also GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965 [1985].) The adequacy or sufficiency of the opposing party’s proof is not an issue until the moving party sustains its burden. (Bray v Rosas, 29 AD3d 422 [1st Dept 2006].) Moreover, the parties’ competing contentions must be viewed “in a light most favorable to the party opposing the motion.” (Lakeside Constr. v Depew & Schetter Agency, 154 AD2d 513, 514 [2d Dept 1989].)
Here, the trustee is not now seeking adjudication of the amounts of overpayment. Rather, he asks for a ruling that the defendants are obligated to reimburse the partnership for whatever amount is ultimately determined to have been overpaid. The court (Moskowitz, J.) and the Appellate Division, First Department, have considered a number of the trustee’s claims in related cases against limited partners in Lipper Convertibles. The trustee relies on these opinions in support of the motions and asks the court to follow them as controlling law under principles of stare decisis and law of the case. Defendants argue that the trustee relies entirely on these principles in lieu of *746 substantive argument, and that if the court decides to reach the merits, they should have an opportunity to submit additional argument.
Defendants have had ample opportunity to submit briefing on the merits and their argument that the trustee relies solely on the principles of stare decisis and law of the case is unfounded. The trustee has made substantive arguments and submitted evidence in support of his motions and in opposition to the defenses and counterclaims.
In any event, there is support for the trustee’s argument that stare decisis applies. As Chief Judge Breitel observed in People v Hobson (39 NY2d 479, 488 [1976]), the root of stare decisis is the “humbling assumption, often true, that no particular court as it is then constituted possesses a wisdom surpassing that of its predecessors.” Of course, the concept of “controlling precedent” is more naturally associated with appellate decision-making, but the certainty and stability that stare decisis engenders are equally beneficial to the trial courts.
The trustee has submitted the following decisions issued by Justice Moskowitz in related cases: Matter of Lipper Holdings, LLC (Apr. 11, 2003, index No. 603653/02 [liquidation proceeding]); Williamson v Barish (Oct. 11, 2005, index No. 6-01864/ 04); Williamson v Arbitrage Select Fund (Dec. 2, 2005, index Nos. 602033/04 and 600593/06); Williamson v Barish (2005 NY Slip Op 30455[U]); Williamson v Koch (Apr. 25, 2007, index No. 600286/06); and Williamson v PricewaterhouseCoopers LLP (Nov. 7, 2007, index No. 602106/2004).
Defendants have not persuaded the court that these decisions are erroneous. The court, therefore, will consider these decisions with the respect they are due and will be loathe to rule differently unless the particular facts and circumstances of the pending matters are materially different. As for the doctrine of law of the case, it does not apply here because these are separate cases. (See e.g. People v Evans, 94 NY2d 499, 502 [2000] [finding law of the case addresses judicial determinations made in course of single litigation].)
A. Unjust Enrichment and Money Had and Received
The trustee has pleaded claims for unjust enrichment and money had and received against defendants. In the Barish case, Justice Moskowitz upheld these claims, concluding in relevant part:
“There is a long-established principle that money *747 paid under mistake of material fact may be recovered, unless the party resisting repayment can demonstrate that its position has not changed by reason of payment as to make repayment inequitable.” (Williamson v Barish, 2005 NY Slip Op 30455[U] at *7, quoting Kirby McInerney & Squire, LLP v Hall Chame Burce & Olson, S.C., 15 AD3d 233 [1st Dept 2005].)
In the Kirby decision relied on by Justice Moskowitz, the First Department affirmed denial of a motion to dismiss an unjust enrichment claim where overpayments had been made to defendants based on a mistake as to the amount of fees actually owed by plaintiff to defendants. (Kirby, 15 AD3d 233 [2005]; see generally Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 422 [1972], cert denied 414 US 829 [1973]; Island Fed. Credit Union v Smith, 60 AD3d 730, 732 [2d Dept 2009] [finding that party who pays money, under mistake of fact, to one not entitled to it should, in equity and good conscience, be permitted to recover it].) That rationale applies here as well, where Lipper Convertibles allegedly made overpayments to defendants. Defendants have not cited any law to the contrary.
Similarly, the claim of money had and received, like a claim for unjust enrichment, “rests upon the ‘broad considerations of right, justice, and morality.’ ” (Interior by Mussa v Town of Huntington, 174 Misc 2d 308, 311 [App Term 1997], quoting Board of Educ. of Cold Spring Harbor Cent. School Dist. v Rettaliata, 164 AD2d 900, 901 [2d Dept 1990].) On appeal in Rettaliata, the Court of Appeals reversed dismissal of the Board of Education’s claim for money had and received, explaining that the claim “ ‘allows [a] plaintiff to recover money which has come into the hands of the defendant “impressed with a species of trust” (see Chapman v Forbes, 123 NY 532, 537) because under the circumstances it is “ ‘against good conscience for the defendant to keep the money.’ ” ’ ” (Board of Educ. of Cold Spring Harbor Cent. School Dist. v Rettaliata, 78 NY2d 128, 138 [1991] [citations omitted].) Defendants do not challenge the application of these controlling principles.
Justice Moskowitz also addressed the defendants’ claim that the amended and restated partnership agreement (dated July 1, 1993) covers this dispute and precludes a cause of action for unjust enrichment and money had and received. The court found that nothing in the partnership agreement covers the subject matter of this dispute:
*748 “The provisions . . . that defendant cites merely lay out the procedures in the event a limited partner withdraws. Nothing in the Partnership Agreement addresses mistaken overpayments. . . .
“Given the fiduciary nature of the relationship between partners to deal with each other in the utmost good faith, one would think that, had the parties . . . desired to release partners from liability for mistaken overpayments, they would have specifically said so.” (2005 NY Slip Op 30455[U] at *6-7.)
The court concluded that under the law, the plaintiff could proceed under a theory of quantum meruit. (Id. at *5, citing Joseph Sternberg, Inc. v Walber 36th St. Assoc., 187 AD2d 225, 228 [1st Dept 1993] [quantum meruit claim allowed where contract silent as to amount of commission].) The trustee’s claim is equitable and not based on provisions in the agreement. (See Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113 [1st Dept 1990], lv denied 77 NY2d 803 [1991] [court affirmed summary judgment for trust company seeking to recover overpayment to bank].)
Defendants point specifically to two provisions in the agreement as support for their argument. Section 8.2 (c) states that once a partner’s withdrawal is effected, “such Partner shall cease to be a Partner . . . and shall cease to share in Net Profits and Net Losses, as of the last day of the Accounting Period which ends upon the effective date of such withdrawal.” Justice Moskowitz concluded in Williamson v Arbitrage Select Fund (Sup Ct, NY County, Nov. 23, 2005, index No. 602033/04, slip op at 2-3), that
“[w]hile [section 8.2 (c)] may appear to mandate dismissal because defendants have no liability for net losses outside the last day of the ‘Accounting Period,’ there is nothing in the record to indicate when the Partnership took the losses for accounting purposes. Hence, there is nothing for this court to base dismissal upon, even if defendants’ interpretation were correct.”
Defendants find error in this reasoning because the agreement defines “Accounting Period” as up to three months, and these actions were filed more than three months after they withdrew. The agreement, however, defines “Net Loss” as “net operating loss of the Partnership for such Accounting Period *749 . . . determined in accordance with generally accepted accounting principles, provided that Net Losses (i) shall include both realized and unrealized appreciation and depreciation.” (Emphasis added.) This definition, read in conjunction with section 8.2 (c), and section 8.2 (a), which clarifies that a partner’s withdrawal is “effective as of the last day of the Fiscal Quarter,” unambiguously shows that the parties intended to protect the withdrawing limited partner from losses (and preclude the partner from reaping profits) incurred by the fund as a result of market activity after the effective date of the withdrawal. These provisions contemplate business as usual, not the kind of wholesale fraud that was committed here. If anything, the “loss” incurred by the partnership occurred at the point defendants were overpaid, which was well within the “accounting period.”
Next, defendants point to section 8.3, which gives the general partner the right to withhold or limit distributions in order, inter alia, to await completion of the partnership’s audited financial statements. Defendants construe this provision as operating to foreclose the general partner from seeking return of a distribution after applicable “protective periods have passed.” This provision, as the provisions noted above, simply does not address the mistaken distribution of massive overpayments resulting from fraud committed in the valuation and auditing process that victimized all of the limited partners. Defendants’ argument is rejected. The agreement does not foreclose the trustee from seeking equitable remedies.
Defendants also argue that the trustee has failed to submit undisputed evidence that the Lipper Convertibles portfolio was overvalued or that the disbursements at issue here were in fact overinflated. The court disagrees. In support of his claims, the trustee has submitted relevant portions of the voluminous EDO Seidman report and supplemental report detailing the overvaluation of Lipper Convertibles’ assets, calculations specific as to each defendant, and the methodology used, along with an affidavit of Karl D. Hampe, a managing director of EDO Seidman. The undisputed evidence shows that defendants have been in possession of these documents for a considerable period of time. Defendants failed to raise any questions or objections as to what was done or the conclusions drawn therefrom. Nor do they raise any specific objections or provide evidence disputing the accuracy or validity of these reports, their calculations and their conclusions.
*750 The court observes that Justice Moskowitz, in the liquidation proceeding, had reviewed the initial report prior to issuing an April 11, 2003 order approving in part the plan for distribution of the net cash assets of the investment fund limited partnerships, including Lipper Convertibles. On appeal, the First Department affirmed that order and agreed with the lower court’s “cogent analysis” of the limited partnership agreements as permitting the general partner (Lipper Holdings) to revalue capital accounts to correct “erroneous historical values” that resulted in “phantom profits.” (Matter of Lipper Holdings v Trident Holdings, 1 AD3d 170, 171 [1st Dept 2003].) This does not establish the accuracy of the EDO Seidman report, but it does show there was no dispute that the assets had been overvalued. Subsequently, Justice Moskowitz approved the plan of distribution and the EDO Seidman supplemental report, which contains specific information as to the overpayments made to withdrawn limited partners, including defendants here. (Feb. 13, 2004, index No. 603653/02.)
Defendants claim they were not parties to the liquidation proceeding and did not have an opportunity to challenge the reports. This is disingenuous as to at least one of the defendants, University of Minnesota Foundation, which appeared in and actively litigated in that proceeding. The remaining defendants have not offered an explanation as to why they did not do likewise. They had the reports and the specific calculations of overpayment. If they had valid questions about the accuracy of the reports and the conclusions, they could have raised those concerns early on, instead of waiting five years. The court further notes that defendants failed to raise their concerns until substantive motions were filed in this case, rendering hollow their present complaints about discovery compliance.
The trustee has met his burden and shown by submission of undisputed evidence that the Lipper Convertibles net asset value was overvalued when defendants withdrew and that defendants received inflated disbursements from the partnership. These facts establish the requisite elements of unjust enrichment and money had and received. The amount of the overpayments is an issue of fact yet to be determined.
B. Defenses
1. In Pari Delicto
Defendants argue that the trustee is barred from pursuing claims against them because the misdeeds of the partnership’s manager Strafaci and auditor PwC should be imputed to *751 the partnership, in whose shoes the trustee stands. The equitable defense of in pari delicto bars a plaintiff from recovering from a defendant where each is at fault. (Stecher v 85th Estates Co., 43 AD3d 732, 736 [1st Dept 2007]; Bullmore v Ernst & Young Cayman Is., 20 Misc 3d 667 [Sup Ct, NY County 2008].) In pari delicto is related to, although distinct from, the Wagoner rule, which precludes a bankruptcy trustee from asserting a claim against a third party for wrongdoing to the corporation with the cooperation of management. (Id. at 670, citing Shearson Lehman Hutton, Inc. v Wagoner, 944 F2d 114 [2d Cir 1991].) As Justice Ramos explained in the Bullmore case, in an action by liquidators of a hedge fund against the auditor, “[t]he rationale underlying the Wagoner rule derives from a fundamental principle of agency that the wrongdoing of corporate management committed within the scope of their employment will generally be imputed to the corporation.” (Id.)
Justice Moskowitz explained in the Morgado action that
“[t]his doctrine prevents a trustee from asserting a claim against a third-party where management has participated with that third-party in the wrongful acts. ‘Because management’s misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the rule bars a trustee from suing to recover for a wrong that he himself essentially took part in.’ (Wight v. BankAmerica Corp., 219 F3d 79, 86-87 [2d Cir 2000]; Shearson Lehman Hutton, Inc. v. Wagoner, 944 F2d 114, 117 [2d Cir. 1991]).” (Morgado Family Partners, LP v Lipper, 6 Misc 3d 1014[A], 2004 NY Slip Op 51791[U], *3 [Sup Ct, NY County 2004], affd 19 AD3d 262 [1st Dept 2005].)
Justice Moskowitz did not reach the merits of the in pari delicto defense raised in Morgado by PwC but did comment that the trustee was the “best choice” to sue PwC because he was independent and, if successful, would benefit the entire partnership. (2004 NY Slip Op 51791[U], *5.) On appeal from the portion of that decision issuing a stay of derivative claims, the First Department noted, “[I]t is unsettled that in pari delicto can ever apply against an innocent, nonbankruptcy trustee.” (19 AD3d at 263.)
A decision that is pivotal to this court’s analysis is the one made by Justice Moskowitz denying summary judgment on the ground of in pari delicto in a related case Williamson v PricewaterhouseCoopers LLP (index No. 602106/2004). The court *752 concluded that any fault of the funds’ management could not be imputed to the “innocent successor” appointed by the court to recover funds from wrongdoers for the benefit of the limited partners who lost money. Under these circumstances, the wrongdoers have been removed from the picture and will not benefit from any recovery of proceeds. The court also found that even if the in pari delicto defense did apply to the trustee, whether the “adverse interest” exception to imputation applies would be based on the factual question whether Strafaci “totally abandoned the interests of the Funds.” (Williamson v PricewaterhouseCoopers LLP, Sup Ct, NY County, Nov. 14, 2007, index No. 602106/2004.)
Justice Moskowitz concluded that it would be inequitable to block the trustee’s claims against PwC, because the innocent investor partners who lost money will benefit and the former managers or officers who were possibly aware of, or assisted with, the fraudulent overvaluation, would receive nothing. This issue has not been resolved by the New York appellate courts. In resolving the issue in favor of the trustee, Justice Moskowitz relied on federal cases where former officers have fraudulently conveyed the assets of an entity and the court has appointed a receiver or trustee to recover the funds. The suits were allowed to go forward in spite of the in pari delicto defense. (See Scholes v Lehmann, 56 F3d 750 [7th Cir 1995]; see also Federal Deposit Ins. Corp. v O’Melveny & Myers, 61 F3d 17 [9th Cir 1995]; Goldberg v Chong, 2007 WL 2028792, *10, 2007 US Dist LEXIS 49980, *28-30 [SD Fla, July 11, 2007].) This court agrees with that conclusion.
In accordance with Partnership Law § 121-803, Justice Moskowitz appointed Williamson as an independent and impartial trustee to complete liquidation of the partnership and to prosecute claims on its behalf. The appointment was made necessary by the failure of Lipper Holdings (Lipper Convertibles’ general partner and the original liquidating trustee) to adequately explain why it did not recalculate its own historical incentive compensation fees after discovery of the inflated valuation of the fund. On February 13, 2004, a judgment was entered against Lipper Holdings for approximately $91 million reflecting overpaid performance fees.
Unlike a bankruptcy trustee, who is precluded by section 541 of the Bankruptcy Code (11 USC § 541) from bringing any suit that the corporation could not have brought pre-petition, the trustee here is an impartial individual appointed by the court *753 who derives his powers from the partnership agreement and state law. A key element also considered in the analysis is whether the defendant has received a benefit from the conveyance. In Knauer v Jonathon Roberts Fin. Group, Inc. (348 F3d 230 [7th Cir 2003]), the court applied the in pari delicto defense against a receiver of two corporations and distinguished Scholes on the ground that the defendants in Knauer did not benefit from the underlying wrong and were being sued for a common-law tort claim. (Id. at 236.) Here, the defendants benefitted from the overvaluation. The trustee seeks only to recoup funds paid out based on fraudulent valuations, placing it squarely within the class of fraudulent conveyance cases where courts have permitted trustees to proceed forward with recovery of benefits in spite of an in pari delicto defense. (See Scholes, 56 F3d at 754; see also Federal Deposit Ins. Corp., 61 F3d at 19.) The case for permitting the trustee to go forward here is made even stronger by the fact that he is suing on behalf of innocent beneficiaries to recoup overpayments, not on behalf of individuals or entities that participated in committing the fraud with the funds’ manager Strafaci and the auditor PwC.
The court in the Bullmore case (20 Misc 3d 667 [2008]), however, came to a different conclusion. That court, the only other New York court to address this issue, was faced with a similar situation involving fraudulent overvaluation of a hedge fund and the subsequent appointment of liquidators to wind up the fund. The liquidators sued the auditor for negligence in failing to detect the overvaluation. The court determined that the “innocent successor” exception did not apply, distinguishing that case from Williamson v PricewaterhouseCoopers LLP. Significantly, in Bullmore it was undisputed that the investment managers engaging in the illegal overvaluation were senior management controlling “every aspect of the Fund’s operation,” and that the fund benefitted from their misdeeds. (Id. at 676-677.)
In Williamson, Justice Moskowitz commented on, but did not reach, the merits of the adverse interest exception, which precludes application of in pari delicto if the offending officer, board member (or other agent) acted outside the scope of his employment, totally abandoned the corporation’s interests, and acted entirely for his own or another’s purposes. (See Buechner v Avery, 38 AD3d 443 [1st Dept 2007] [applying in pari delicto to trustee of bankrupt corporation where adverse interest exception did not apply], relying on Wight v BankAmerica Corp., 219 *754 F3d 79 [2d Cir 2000].) Justice Moskowitz recognized as an issue of fact whether Strafaci was acting purely for his own benefit and totally abandoned the funds’ interest. This finding alone would have been sufficient to deny summary judgment, but contrary to its import as a distinguishing factor to the Bullmore court, it does not impact the issue of whether an innocent successor can avoid in pari delicto, only whether Strafaci’s conduct is imputed to the fund. If the evidence were to show an adverse interest, then consideration of the “innocent successor” doctrine would be obviated.
Instead of resolving the apparent conflict between the Williamson and Bullmore decisions on the applicability of the “innocent successor” exception to imputation and in pari delicto, this court views both cases as distinguishable on their facts. Here, the trustee is seeking to recoup overpayments from former limited partners, whereas in Williamson and Bullmore the claims were against the auditors and sought tort damages. The identity of the defendant was significant in Bullmore. Justice Ramos concluded that “adopting an innocent successor exception here for the benefit of the Fund’s investors would be inconsistent with the well-settled principle that a negligence claim against a corporate accountant belongs to the corporation-client, unless there is privity between the accountant and the nonclient claiming harm.” (Bullmore, 20 Misc 3d at 678.) Thus, the liquidators were seeking damages from the auditor for the benefit of the fund, which was completely controlled by the offending managers, and not for the benefit of the innocent investors. The court finds, at least under the circumstances of this case, that the defense of in pari delicto does not prevent the trustee, as an innocent successor, from seeking to recoup overpayments to benefit innocent investors.
2. Unclean Hands, Estoppel, Laches
Defendants argue that imputation of misconduct to Lipper Convertibles should also preclude the trustee’s suit under the equitable defenses of unclean hands, estoppel and laches. Under the doctrine of unclean hands, a litigant who is guilty of inequitable conduct with reference to the subject matter of the transaction in suit, is not entitled to recover. (Levy v Braverman, 24 AD2d 430 [1st Dept 1965].)
For the reasons explained above with respect to in pari delicto, the defense of unclean hands does not bar the trustee from recouping overpayments for innocent investors. Nor have defendants established their defense of laches as a matter of *755 law. “Laches is ‘an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party.’ The mere lapse of time, without a showing of prejudice, is insufficient to sustain a claim of laches.” (Matter of Linker, 23 AD3d 186, 189 [1st Dept 2005] [citations omitted], quoting Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003].) The defense of laches is unavailable in an action at law commenced within the period of limitation. (Matter of American Druggists’ Ins. Co., 15 AD3d 268 [1st Dept 2005], lv dismissed 5 NY3d 746 [2005].) An action for money had and received, although governed by equitable principles, is an action at law. (Forrest v Fuchs, 126 Misc 2d 8, 9-10 [Sup Ct, Nassau County 1984], citing Roberts v Ely, 113 NY 128 [1889], and Hoyt v Wright, 237 App Div 124 [1st Dept 1932].) The claim here for unjust enrichment also seeks to enforce a legal right to the return of money mistakenly disbursed and, thus, is not subject to laches. (See Matter of Witbeck, 245 AD2d 848, 850 [3d Dept 1997] [denying motion to dismiss complaint for unjust enrichment because claim was at law and brought within limitations period].)
In any event, the delay in the trustee’s filing suit was justifiable and reasonable, and defendants were not irrevocably prejudiced by relying on the delay. Lipper Convertibles notified defendants of the overvaluation and sought voluntary reimbursement of the overpayment shortly after EDO Seidman, pursuant to court order, completed the revaluation of the limited partners’ capital accounts to correct erroneous historical values. That supplemental report was completed in December 2003 and approved by Justice Moskowitz by her February 13, 2004 order. The trustee then notified former limited partners (of the circumstances and the report’s conclusions) by letter in July 2004, and sought to resolve the overpayments without litigation. This delay was not unwarranted or inequitable, and does not constitute “ ‘such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.’ (2 Pomeroy, Equity Jurisprudence [5th ed.], § 419, pp. 171-172).” (Matter of Barabash, 31 NY2d 76, 81 [1972].)
Defendants cite to their payment of taxes on the disbursed amounts, the difficulty and delay in obtaining a tax refund, and their use of the funds as amounting to the prejudice necessary to establish laches. (See id. [“(t)he essential element of this eq *756 uitable defense is delay prejudicial to the opposing party (Marcus v. Village of Mamaroneck, 283 N. Y. 325, 332)”].) In the Barabash case, the court rejected the laches defense where the respondent had spent distributed estate funds before the appellants knew of or asserted their cause of action. (Id. at 81-82.) The dissipation of the funds had occurred before the plaintiff brought suit and the defendant was unable to “affirmatively show any change of position prejudicial to him due to [plaintiffs] alleged delay in instituting suit.” (Id. at 82.) Here, the taxes were paid well before the overvaluation was discovered and verified and the trustee was appointed. Moreover, defendants had use of the money during this period.
Finally, the defense of estoppel does not apply. An “estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury (Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448 . . . ). It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought . . . .” (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982] [internal quotation marks omitted].)
Defendants have not established that the trustee or those he represents said or did anything fraudulent or unjust.
3. Statute of Limitations
Defendants University of Minnesota Foundation, RLH, Kirsch and Arbitrage Select assert that the claims against them are time-barred. The statute of limitations applicable to these claims is three years. (Williamson v Culbro Corp. Pension Fund, 41 AD3d 229 [2007].) The trustee has conceded that the first distribution made to defendant University of Minnesota Foundation is time-barred. However, the second distribution made on January 31, 2002, remains at issue.
These defendants base their argument on claims that the complaint was not properly or timely served pursuant to CPLR 306-b. The court rejects this argument as frivolous. Justice Moskowitz issued orders granting extensions of time in which to serve, and the complaints were served before expiration of the extension periods. As stated in the affidavit of Jonathan Gardner, the trustee’s counsel, defendants did not assert improper service as a defense, move to vacate the ex parte order extending time to serve, or seek dismissal on this ground. They *757 have waived any right to rely on the defense. (See Matter of Fry v Village of Tarrytown, 89 NY2d 714 [1997].)
4. Remaining Defenses
The remaining defenses are either not sustainable as a matter of law or concern issues of damages.
C. Counterclaims
The counterclaims for unjust enrichment, fraud, false representations and negligent misrepresentation are precluded for the same reasons discussed above concerning in pari delicto. Resolution of the counterclaim of defendant University of Minnesota Foundation for payment of moneys retained in its capital account, and of defendants’ counterclaims for setoff will be resolved at the inquest on damages.
D. The Arbitration
Where there has been a final determination on the merits, an arbitration award, even one never confirmed, may serve as the basis for the defense of collateral estoppel in a subsequent action. (Acevedo v Holton, 239 AD2d 194 [1st Dept 1997].)
“[F]inality for collateral estoppel purposes occurs when issues have been necessarily determined in a prior final disposition of a cause of action on the merits (Siegel, NY Prac §§ 446, 457 [1978]). ‘[A]ny finding essential to the judgment constitutes a component of that judgment and lends itself to an estoppel’ (Siegel, NY Prac § 464, at 614 [1978]).” (State Bank of Albany v McAuliffe, 108 AD2d 979 [3d Dept 1985]; see Franklin Dev. Co., Inc. v Atlantic Mut. Ins. Co., 60 AD3d 897, 899 [2d Dept 2009].)
The issue must have been decided in the prior action against the party against whom the issue is sought to be determined, that party must have had a full and fair opportunity to litigate the issue, and the issues must be identical. (Id.)
There is insufficient information available on which to determine exactly what issues were decided in the FINRA arbitration proceeding. The court is cognizant of the evidence filed here, which shows unequivocably that Lipper paid itself inflated fees based on the overvaluation, the basis for a $91 million judgment against Lipper Holdings by the court (Moskowitz, J.), and which raises questions about Lipper’s failure to discover or stop Strafaci’s fraud. The arbitration award establishes that the panel ruled against the trustee and in favor of Lipper, but the basis for that ruling is not evident. The arbitration award, thus, is not material to the cases before the court. Accordingly, *758 it is ordered that the motions for partial summary judgment as to liability by plaintiff Richard A. Williamson, as successor liquidating trustee on behalf of Lipper Convertibles, L.E, is granted; and it is further ordered that the cross motions for summary judgment by each of the defendants herein are denied, except that the cross motion for summary judgment made by defendant University of Minnesota Foundation is granted in part on consent, to the extent of dismissing, as barred by the statute of limitations, all claims against it based on the first disbursement from Lipper Convertibles, L.E; and it is further ordered that the issues of damages, setoff, attorney’s fees and costs will be referred to a special referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties, the special referee shall determine the aforesaid issues.