■ FIA LEVERAGED FUND LTD. et al., Appellants, v GRANT THORNTON LLP, Respondent, et al., Defendants. MASSACHUSETTS BAY TRANSPORTATION AUTHORITY RETIREMENT FUND et al., Appellants-Respondents, v CITCO FUND SERVICES (CAYMAN ISLANDS) LTD., Respondent, and CITCO GROUP LTD. et al., Respondents-Appellants, et al., Defendant. [56 NYS3d 12]—

Judgment, Supreme Court, New York County (Eileen Bransten, J.), entered May 12, 2016, to the extent appealed from as limited by the briefs, dismissing the complaint as against defendant Grant Thornton LLP, unanimously affirmed without costs. Appeal from order, same court and Justice, entered January 20, 2016, which, inter alia, granted Grant Thornton's motion to dismiss the complaint as against it pursuant to CPLR 3211, unanimously dismissed, without costs, as subsumed in the appeal from the judgment. Orders, same court and Justice, entered May 10, 2016, which, to the extent ap-

pealed from as limited by the briefs, denied the motions of defendants Citco Trading, Inc., Citco Global Custody (N.A.) N.V., Citco Banking Corp., SFT Bank N.V., Ermanno Unternaehrer, and Citco Group Limited to dismiss the complaint pursuant to CPLR 3211 (a) (8), and granted all defendants' motions to dismiss the first through fifteenth causes of action pursuant to CPLR 3211 (a) (1) and (7), unanimously modified, on the law, to deny Citco Fund Services (Cayman Islands) Ltd.'s (Citco Cayman) motion to dismiss the eleventh and twelfth causes of action as against it, to grant Citco Global's motion to dismiss for lack of personal jurisdiction, to deny Unternaehrer's motion to dismiss the eighth cause of action, and to deny Citco Cayman's, Citco Trading, Citco Bank and SFT's, and Citco Group's motions to dismiss the fifteenth cause of action as against them, and otherwise affirmed, without costs.

Citco Cayman does not contest New York's jurisdiction over it. However, Citco Group (Citco Cayman's parent) is not subject to New York jurisdiction simply because Citco Cayman is (see e.g. *FIMBank P.L.C. v Woori Fin. Holdings Co. Ltd.*, 104 AD3d 602 [1st Dept 2013]; *Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 308 [1st Dept 2003]). Plaintiffs failed to satisfy the four factors set out in *Volkswagenwerk AG. v Beech Aircraft Corp.* (751 F2d 117 [2d Cir 1984]), which we have adopted (see e.g. *FIMBank*, 104 AD3d at 603). For example, Citco Group's subsidiaries are not financially dependent on it; rather, since Citco Group is a holding company, it is financially dependent on its subsidiaries (see *Porter v LSB Indus.*, 192 AD2d 205, 214 [4th Dept 1993]).

If Citco Cayman's New York contacts cannot be imputed to its parent, a fortiori, they cannot be imputed to its siblings, Citco Trading, Citco Global, Citco Bank, and SFT (see *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F Supp 2d 403, 409 n 9 [SD NY 2002]).

Unternaehrer, who is allegedly a high-ranking Citco executive (plaintiffs use "Citco" to refer to all Citco defendants), is a defendant in four causes of action relating to something the complaint calls the FIP Transaction. In opposition to defendants' motions to dismiss, plaintiffs submitted emails between Unternaehrer, on the one hand, and nonparty Alphonse Fletcher Jr. (Mr. Fletcher), the investment manager of those plaintiffs that are hedge funds, and an employee of nonparty Fletcher Asset Management (FAM), Mr. Fletcher's New York-based company, on the other, discussing how to structure the FIP Transaction, and a wire transfer instruction showing that Unternaehrer received payment in the FIP Transaction via a

transfer to a New York bank. This is sufficient for specific personal jurisdiction under CPLR 302 (a) (1) (*see e.g. Licci v Lebanese Can. Bank, SAL*, 20 NY3d 327, 330-332, 339-341 [2012]; *C. Mahendra [NY], LLC v National Gold & Diamond Ctr., Inc.*, 125 AD3d 454, 457 [1st Dept 2015]). In light of Unternaehrer's numerous other contacts with New York (e.g., leasing New York apartments from 1996 through 2005, meeting with Mr. Fletcher and other FAM employees in New York on many occasions between January 1999 and March 2007, and attending a FAM event in September 2007), it does not violate due process to exercise jurisdiction over him (*see generally Rushaid v Pictet & Cie*, 28 NY3d 316, 330 [2016]).

Plaintiffs established that Unternaehrer was acting as the agent of Citco Trading, Citco Bank, and SFT, and therefore that New York can exercise jurisdiction over them. Plaintiffs showed that Unternaehrer "engaged in purposeful activities in this State in relation to [the] transaction [sued upon] for the benefit of and with the knowledge and consent of [these other] defendants and that they exercised some control over [him] in the matter" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]; *see generally New Media Holding Co. LLC v Kagalovsky*, 97 AD3d 463, 463-464 [1st Dept 2012]). Although Citco Trading's sale of nonparty Richcourt Holding Inc. (a British Virgin Islands company) was mostly conducted from London and closed in Monaco, Unternaehrer admitted that he had some email and telephone communications with representatives of Fletcher (Mr. Fletcher and his various companies) during the sales process. Indeed, Unternaehrer was both the manager for Citco's relationship with Fletcher and the Managing Director/ CEO of Richcourt Holding and a director of six of its subsidiaries.

The claims against Citco Bank and SFT arise out of loans they made to plaintiff FIA Leveraged Fund Ltd. (Leveraged) and the manner in which those loans were repaid. The complaint alleges that Citco Bank and SFT "communicated regularly with FAM and [Mr.] Fletcher in New York via e-mail, phone, and mail regarding Leveraged, the loans to Leveraged, and repayment of the loans. The Citco Lender Defendants directed . . . their demands for repayment . . . to [Mr.] Fletcher and FAM at their offices at 48 Wall Street." Neither Citco Bank nor SFT denied this in the affirmations they submitted in support of their motions to dismiss. In addition, Unternaehrer admitted that he had communications with Fletcher representatives about the loans.

New York does not have specific personal jurisdiction,

however, over Citco Global. Citco Global's involvement in this case is that it provided consents on behalf of non-Series N investors in Leveraged to subordinate their interests to those of Series N so that three nonparty Louisiana pension funds would invest in Series N in 2008. In opposition to defendants' motion, plaintiffs submitted two documents from 2009. Neither has anything to do with the consents, and neither shows that Unternaehrer engaged in purposeful activity in New York in connection with the Citco Global consents.

Plaintiffs allege that Citco Group is the alter ego of other Citco companies that actually committed the wrongdoing. Although the complaint alleges in conclusory terms that Unternaehrer acted as the agent of all of the named Citco defendants, we decline to find that he acted as Citco Group's agent. That would make it too easy for plaintiffs to get around the parent-subsidiary test for jurisdiction.

The remaining possibility for obtaining jurisdiction over defendants-appellants is conspiracy jurisdiction (*see e.g. Lawati v Montague Morgan Slade Ltd.*, 102 AD3d 427 [1st Dept 2013]). Defendants contend that the complaint does not allege an agreement by the Citco defendants to participate in a conspiracy to defraud Massachusetts Bay Transportation Authority Retirement Fund (MBTARF) and that MBTARF failed to identify an overt act. However, we find that the complaint contains factual allegations from which such an agreement can be inferred (*see Abrahami v UPC Constr. Co.*, 176 AD2d 180 [1st Dept 1991]). It also alleges an overt act, namely, that alleged co-conspirators Mr. Fletcher and FAM took $7.1 million of MBTARF's investment in nonparty Fletcher Fixed Income Alpha Fund, Ltd. (Alpha) and used it in violation of Alpha's offering memorandum as partial repayment of Leveraged's loan to Citco Bank and SFT (*see Weinberg v Mendelow*, 113 AD3d 485, 487 [1st Dept 2014]).

Turning to the additional requirements for conspiracy *jurisdiction* (*see Lawati*, 102 AD3d at 428), we must examine Leveraged's and Fletcher Income Arbitrage Fund Ltd. (Arbitrage)'s conspiracy claims with respect to personal jurisdiction. Leveraged and Arbitrage's conspiracy claims allege that Mr. Fletcher and FAM fraudulently transferred cash from plaintiff Fletcher International, Ltd. to Unternaehrer in the FIP Transaction. The transfer was made by instructing SFT to transfer money from FIP's account to Citco Bank's account at HSBC New York, for further credit to SFT, for further credit to Unternaehrer. Using a New York bank account for a fraudulent scheme constitutes a tort within New York (*see Banco Nacional*

*Ultramarino v Chan*, 169 Misc 2d 182, 187-188 [Sup Ct, NY County 1996], *affd* 240 AD2d 253 [1st Dept 1997]).

MBTARF's conspiracy claim alleges that Mr. Fletcher and FAM made misrepresentations to it about how its investment would be used. It also alleges that they diverted its money. Drawing inferences in favor of plaintiffs (*see Rushaid*, 28 NY3d at 327; *Wilson v Dantas*, 128 AD3d 176, 182 [1st Dept 2015]), we find that the misrepresentation and diversion occurred in New York because FAM and Mr. Fletcher were located there.

We find that the additional *Lawati* factors (102 AD3d at 428) are satisfied as to Citco Group but not Citco Global. Since Citco Group is the parent, it is logical to infer that Citco Cayman (a New York coconspirator because it has not contested jurisdiction) acted under its control. However, since Citco Global is only a sibling of Citco Cayman, it is not as logical to infer that Citco Cayman acted under Citco Global's control.

Unlike Leveraged and Arbitrage, MBTARF is not subject to in pari delicto. Therefore, we reinstate its conspiracy claim (fifteenth cause of action) as against Citco Cayman, Citco Trading, Citco Bank, SFT, and Citco Group.

Leveraged and Arbitrage each assert a breach of contract claim against Citco Cayman based on their respective administrative services agreements. The two contracts in issue contain a choice of law clause providing that the agreements are "governed by and constructed in accordance with" Cayman law. Choice of law provisions apply to substantive issues (*Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410, 416 [2010]), and matters of procedure are governed by the law of the forum state (*Lerner v Prince*, 119 AD3d 122, 127 [1st Dept 2014]). In pari delicto is a substantive equitable defense (*see Ehrlich for Hoffmans Trade Group LLC v Commercial Factors of Atlanta*, 567 BR 684, 697-698 [ND NY 2017]; *In re Hellas Telecom. [Luxembourg] II SCA*, 524 BR 488, 532 [SD NY 2015]; *LaSala v Bank of Cyprus Pub. Co. Ltd.*, 510 F Supp 2d 246, 278 [SD NY 2007]). Thus, it is governed by the contracts' choice of law provisions. The question of whether a party is in pari delicto is inextricably intertwined with the issues underlying the substantive claims brought by that party (*see Lerner v Prince*, 119 AD3d at 128). Therefore, Cayman law applies to the in pari delicto defense to the contract claims.

Under Cayman law, Citco Cayman would not be entitled to dismissal based on in pari delicto. Citco Cayman has not met its " 'heavy burden' " of showing that "application of [foreign] law would be offensive to a fundamental public policy of this

State" (*Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 632 [2006]). The fact that Cayman law takes a different approach to the adverse interest exception to imputation than that of New York law is not "truly obnoxious" (*Cooney v Osgood Mach.*, 81 NY2d 66, 79 [1993]), especially since the issue is whether a Cayman entity will be liable to two other Cayman entities. Thus, we reinstate Leveraged's and Arbitrage's contract claims against Citco Cayman (eleventh and twelfth causes of action).

We reinstate Arbitrage's fraudulent conveyance claim against Unternaehrer (eighth cause of action), because *"in pari delicto* is not a defense to a fraudulent conveyance suit" (*In re Verestar, Inc.*, 343 BR 444, 480 n 19 [SD NY 2006]).

Plaintiffs contend that, pursuant to New York's internal affairs doctrine, Cayman law (the law of Leveraged and Arbitrage's place of incorporation) governs the issue whether Mr. Fletcher and FAM's wrongdoing will be imputed to Leveraged and Arbitrage for tort claims. However, the internal affairs doctrine does not apply to the adverse interest exception (*see Concord Capital Mgt., LLC v Fifth Third Bank*, 2011 WL 10564345, *11-12 [Sup Ct, NY County 2011], *affd sub nom. Concord Capital Mgt., LLC v Bank of America., N.A.*, 102 AD3d 406 [1st Dept 2013], *lv denied* 21 NY3d 851 [2013]). Internal affairs are matters of corporate governance (*see e.g. Richbell*, 309 AD2d at 301), while imputation is a question of *agency* (*see Kirschner v KPMG LLP*, 15 NY3d 446, 465 [2010]). We must determine which state has "the most significant relationship" with the issue of imputation (*see Indosuez Intl. Fin. v National Reserve Bank*, 98 NY2d 238, 245 [2002]). Both New York (the location of the alleged wrongdoers whose wrongdoing will be imputed) and the Cayman Islands (the location of the entities to which wrongdoing will be imputed) have some relationship with that issue. The law of the same state need not be applied to all the issues arising out of a tort claim (*Babcock v Jackson*, 12 NY2d 473, 484 [1963]; *see Simon v Philip Morris Inc.*, 2000 WL 1745265, *28, 2000 US Dist LEXIS 16713, *88-89 [ED NY, Nov. 16, 2000, No. 99 CV 1988]). However, the jurisdiction with the greatest "interest in litigation of the underlying claims" also has "an acute interest in the availability of defenses to those claims" (*Cobalt Multifamily Invs. I, LLC v Shapiro*, 857 F Supp 2d 419, 434 [SD NY 2012]). Plaintiffs have chosen to sue defendants under New York law. They also allege that Grant Thornton's audits were performed in New York. Because we cannot conclude that the Cayman Islands has a more significant relationship to imputation than New York, we will apply New York law.

The in pari delicto issue may be resolved on the pleadings in this case (*see Kirschner*, 15 NY3d at 459 n 3). The complaints do not allege that Leveraged and Arbitrage were Mr. Fletcher and FAM's intended victims (*see id.* at 466) or that Mr. Fletcher and FAM's fraud was committed against Leveraged and Arbitrage rather than on their behalf (*see id.* at 466-467). The complaints show that "the corporate wrongdoer's fraudulent conduct enable[d] the business to survive—to attract investors" (*id.* at 468).

Even if, arguendo, the overpayment exception to in pari delicto survived *Kirschner*, neither Leveraged nor Arbitrage is a court-appointed trustee (*cf. Williamson v Stallone*, 28 Misc 3d 738, 754 [Sup Ct, NY County 2010]). Moreover, Leveraged and Arbitrage do far more than seek to recover overpayments.

Under New York law, the doctrine of in pari delicto is applicable to accounting malpractice claims (*Stokoe v Marcum & Kliegman LLP*, 135 AD3d 645 [1st Dept 2016]). Concur—Tom, J.P., Acosta, Richter and Kahn, JJ.