Bangladesh Bank v Rizal Commercial Banking Corp. (2024 NY Slip Op 01112)

Bangladesh Bank v Rizal Commercial Banking Corp.

2024 NY Slip Op 01112

Decided on February 29, 2024

Appellate Division, First Department

PITT-BURKE, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 29, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Saliann Scarpulla Bahaati E. Pitt-Burke LlinÉt M. Rosado Kelly O'Neill Levy

Index No. 652051/20 Appeal No. 1165 Case No. 2023-00324 

[*1]Bangladesh Bank, Plaintiff-Respondent,
v
Rizal Commercial Banking Corporation, et al., Defendants-Appellants, Maia Santos Deguito, et al., Defendants.

Certain defendants appeal from an order of the Supreme Court, New York County (Andrea P. Masley, J.), entered January 17, 2023, which, insofar as appealed from as limited by the briefs, denied the motions of defendants RCBC, Romualdo Agarrado, Nestor O. Pineda, Ismael S. Reyes, Brigette B. Capina, Raul Victor B. Tan, and Lorenzo V. Tan to dismiss the complaint as against them under CPLR 327(a), CPLR 3211(a)(7), and CPLR 3211(a)(8), and denied defendant Kim Sin Wong's motion to dismiss the complaint as against him under CPLR 327(a).

Sidley Austin LLP, New York (Eamon P. Joyce, Tai-Heng Cheng, Melissa ColÓn-Bosolet, Melanie Berdecia, Tyler J. Domino and James R. Honer of counsel), for Rizal Commercial Banking Corporation, Brigitte B. CapiÑa, Nestor O. Pineda, and Romualdo Agarrado, appellants.
The Kochisarli Law Firm, New York (Brian Kochisarli of counsel), for Lorenzo V. Tan, Raul Victor B. Tan, and Ismael S. Reyes, appellants.
The Howley Law Firm P.C., New York (John J.P. Howley of counsel), for Kam Sin Wong, appellant.
Cozen O'Connor, New York (Jesse R. Loffler and John J. Sullivan of counsel), for respondent.

PITT-BURKE, J. 

This appeal raises the interesting question of whether a trial court has the discretion to deny a motion to dismiss a complaint pursuant to CPLR 327(a), on forum non conveniens grounds, after it has already found New York to be an inconvenient forum as to another defendant and dismissed the complaint as against it. For the reasons that follow, we find that Supreme Court had the discretion to deny the motion to dismiss the complaint on the ground of forum non conveniens as that doctrine presumes jurisdiction. However, Supreme Court should have dismissed the action as against defendants Reyes, Pineda, Capina, and Agarrado (individual defendants), because the allegations in the complaint are insufficient to establish that New York had long-arm "conspiracy" jurisdiction under CPLR 302(a) as to these defendants. Supreme Court should have also dismissed the causes of action sounding in conversion, as the record establishes that the stolen funds are no longer specifically identifiable.
Facts
This case arises from an international fraud and money laundering scheme, whereby plaintiff, the central bank of the People's Republic of Bangladesh, alleges that over $81 million was stolen from its account at the Federal Reserve Bank of New York (NY Fed). The theft, which occurred when plaintiff's computer network was infiltrated by unknown North Korean hackers, was effectuated by the issuance of unauthorized payment orders which were used to fraudulently transfer plaintiff's funds through defendant Rizal Commercial Banking Corporation's (RCBC) accounts.
The hackers began to infiltrate plaintiff's network in January 2015. By January 2016, they gained access to the SWIFTLIVE [FN1] system used by plaintiff to effectuate transactions. The theft was initiated after close of business on February 4, 2016, when the hackers sent 36 payment orders [*2]directing the transfer of nearly $1 billion from plaintiff's NY Fed account to various recipients. While nearly all the transfers were initially rejected due to missing routing information, it is alleged that the hackers obtained RCBC's correspondent account routing information from RCBC individuals and sent revised orders to the NY Fed. Four payment orders, totaling over $81 million, were processed by the NY Fed.
To facilitate the theft, the hackers conspired with defendant RCBC, one of the Philippines's largest banks. Because RCBC did not have an account with the NY Fed, the funds could not be transferred out of the US directly from plaintiff's NY Fed account. Therefore, the hackers used four RCBC correspondent accounts at New York and Pennsylvania branches of Wells Fargo, Bank of New York and Citibank to transfer plaintiff's stolen funds. Importantly, these intermediary banks had access to the NY Fed's Fedwire system and could transfer the stolen funds immediately to the four RCBC correspondent accounts. After the initial transfer to the correspondent accounts, the stolen funds were then transferred abroad to fictitious RCBC accounts in the Philippines.
RCBC employees and Philippine nationals Maia Santos Deguito, Angela Ruth Torres, Lorenzo V. Tan, Raul Victor Tan, Ismael Reyes, Brigitte Capina, Nestor Pineda, and Romualdo Agarrado were involved in opening the fictitious accounts at RCBC branches in the Philippines. These accounts served as conduits to launder the stolen funds through the Solaire and Midas casinos, located in the Philippines, and operated by Bloomberry Resorts and Hotels (BRHI), a Philippine corporation, and Eastern Hawaii Leisure Company (EHL), a branch of a Chinese corporation with a principal place of business in Manila, respectively.
As relevant here, the conduit accounts included five fictitious accounts (fictitious accounts) which were opened by Deguito and Torres and signed off on by Agarrado for defendant Kam Sin Wong,[FN2] owner of EHL and good friend of Lorenzo V. Tan, RCBC's President and CEO. These accounts were opened on May 15, 2015 in the names of fictitious individuals to hold US dollars. Aside from an initial five-hundred-dollar deposit, the accounts remained dormant until the stolen funds were deposited on February 5, 2016.[FN3] Notably, it is alleged that Wong "clearly [knew] that the stolen funds were coming" into the fictitious accounts, because he called RCBC's Deguito on February 5, 2016, and asked "whether a large deposit had been transferred into the [fictitious] Cruz Account." When Deguito asked how Wong knew about the large deposit, Wong responded, "I told you, Lorenzo [Tan] knows this."
On the date of the theft, RCBC opened another fictious account in the name of defendant Go, doing business as Centurytex Trading. The Centurytex paperwork was executed during a meeting between Deguito and Wong at a casino, a venue exempt from reporting requirements under Philippine anti-money laundering law. RCBC laundered [*3]nearly all of plaintiff's funds through the fictitious US dollar Centurytex account. The funds were then transferred into and between fictitious Philrem [FN4] accounts. Importantly, as the fictitious accounts were opened in fictitious names, RCBC and the other banking related defendants, including Lorenzo Tan and Raul Tan (the Tans) and the individual defendants, were the only entities that could transfer funds in and out of the accounts.
Due to the suspicious nature of the transfers, RCBC's Settlements and Operations Groups placed holds on the fictitious accounts, including the fictitious Centurytex account. Raul Tan, the former head of the retail banking group, contacted Pineda and Capina to discuss if the hold was appropriate. Pineda and Capina, in turn, consulted with Deguito, who advised that the account holders were longtime wealthy clients from the Solaire Casino, whose documents were in order and that the transfers had been expected. Raul Tan then ordered the hold removed, despite learning that the transactions were suspicious. Reyes, Capina, Pineda and other senior RCBC officials did nothing to stop the transactions.
Upon discovery of the theft, plaintiff sent stop payment messages to RCBC. However, RCBC did not receive the messages until the next day because it signed out of the SWIFT server after the theft occurred. When RCBC's Settlements Department finally received the stop payment requests, it forwarded them to the Jupiter branch, where Deguito and Torres worked.
At the time the stop payment requests were forwarded to the Jupiter branch, $58.2 million remained in the fictitious accounts. Instead of placing an immediate hold on the accounts, Jupiter branch employees continued to process transfers and waited over six hours to place the holds. This delay resulted in almost all the funds being transferred to the Centurytex account, an account RCBC did not freeze, despite it holding $42.9 million of plaintiff's stolen funds.
RCBC Head Office then sent SWIFT messages to plaintiff and its correspondent banks claiming it placed holds on "the remaining proceeds" even though it had not placed a hold on the Centurytex account. Over the next several days, the stolen funds in the Centurytex account were removed from RCBC.
By the time RCBC filed a Suspicious Transaction Report, over $80 million of plaintiff's funds had been stolen and transferred into Philrem RCBC accounts, converted into Philippine pesos, deposited into other banks, and distributed through various businesses, including EHL, the Centurytex account, and the Solaire and Midas casinos. The stolen funds were converted into casino chips at the Solaire Casino and given to players who used the chips to gamble for over a month.
Relevant Procedural History
Instant Action
Plaintiff commenced this action on May 27, 2020.[FN5] The complaint asserted causes of action for conversion/theft/misappropriation; aiding and abetting conversion/theft/misappropriation; conspiracy to commit conversion/[*4]theft/misappropriation; fraud; aiding and abetting fraud; conspiracy to commit fraud; conspiracy to commit trespass against chattels; unjust enrichment; and money had and received.[FN6]
Prior Motions to Dismiss
BRHI moved to dismiss the complaint pursuant to CPLR 3211(a)(7) and (8) for failure to state a claim and lack of personal jurisdiction, and on forum non conveniens grounds pursuant to CPLR 327(a). EHL and Wong also moved to dismiss the complaint pursuant to CPLR 306-b and CPLR 3211(a)(8), with EHL further moving to dismiss on forum non conveniens grounds pursuant to CPLR 327(a).
On or about April 8, 2022, Supreme Court dismissed the complaint pursuant to CPLR 3211(a)(8) as against defendant BRHI and dismissed the complaint pursuant to CPLR 327(a) as against defendant EHL on condition that EHL consent to the jurisdiction of the Philippine courts and agree to toll any statute of limitations. Notably, Supreme Court's forum non conveniens determination as to EHL focused on the money laundering scheme and EHL's ownership of the casinos that allegedly laundered the stolen money. Supreme Court denied Wong's motion in its entirety. Defendants appealed.
On appeal, we affirmed Supreme Court's determination and as relevant here, found that the court did not abuse its discretion in dismissing the action against EHL on forum non conveniens grounds. Specifically, we held that because "the court thoroughly considered each of the relevant factors in making its determination, there has been no abuse of discretion . . . even if we would have weighed those factors differently" (Bangladesh Bank v Rizal Commercial Banking Corp., 2022 NY Slip Op 31167[U] [Sup Ct, NY County 2022], affd 216 AD3d 590 [1st Dept 2023] [RCBC I] [internal quotation marks and citation omitted]).
Instant Motions to Dismiss
RCBC moved to dismiss the complaint pursuant to CPLR 3211(a)(7) and (8) and CPLR 327(a). As relevant here, RCBC argued that Supreme Court lacked personal jurisdiction over it under New York's long-arm statute because it did not transact business in New York, plaintiff's claims did not arise out of New York business transactions, and it was not otherwise subject to jurisdiction under CPLR 302(a)(1), (2), or (3)(ii). RCBC further argued that due process also prevented exercise of jurisdiction. In regard to forum non conveniens, RCBC contended that the action should be dismissed because the Philippines was the proper forum. In support of its argument, RCBC asserted that plaintiff was a Bangladeshi entity; defendants were residents of the Philippines; the alleged conduct occurred in the Philippines; and litigating in New York would impose hardship on the court and RCBC.
The Tans moved to dismiss the complaint pursuant to CPLR 3211(a)(7) and (8) and CPLR 327(a). In support of their motion, the Tans argued that jurisdiction was improper under CPLR 302(a)(2), because the conspiracy allegations did not confer personal jurisdiction, and under CPLR 302(a)(3)(ii), because there [*5]was no allegation that their purported acts caused injury in New York. The Tans also moved to dismiss on forum non conveniens grounds (CPLR 327[a]).
Individual defendants Reyes, Pineda, Agarrado, and Capina also moved to dismiss the complaint pursuant to CPLR 3211(a)(7) and (8) and CPLR 327(a). As with most of the other defendants, they argued that they were not subject to New York long-arm jurisdiction under CPLR 302(a)(2) and (3)(ii), that the allegations were insufficient to plead claims against them, and that the case should be dismissed on forum non conveniens grounds (CPLR 327[a]).
Lastly, defendant Wong moved to dismiss based on forum non conveniens grounds because Supreme Court dismissed the action against EHL on that basis. Wong argued that the action should be dismissed against him for the same reason EHL's motion was granted. In the alternative, he requested that the action be stayed pending resolution of the proceedings in the Philippines.
By order entered January 17, 2023, the court (Andrea P. Masley, J.) denied defendants' motions to dismiss pursuant to CPLR 302, 327(a), and 3211(a)(7) and (8). As relevant here, the court observed that while the prior motions were focused on the alleged money laundering aspect of the scheme to steal over $100 million [FN7] from plaintiff, the current motions focused on the theft itself in New York. With respect to forum non conveniens, the court analyzed the factors under Islamic Republic of Iran v Pahlavi (62 NY2d 474, 479 [1984], cert denied 469 US 1108 [1985]) and found that New York was the proper forum. As to Wong, the court found that he had waived his forum non conveniens argument by not asserting it in his prior motion. In any event, the court found that Wong's motion would have otherwise been denied on the merits.
The Court also found that it had personal jurisdiction as to RCBC under CPLR 302(a)(1), (2), (3)(i), and (3)(ii) and as to the individual defendants and the Tans under CPLR 302(a)(2) and (3)(ii).[FN8] Lastly, the court concluded that all causes of action against RCBC, the individual defendants, and the Tans (collectively, the RCBC defendants) were adequately pleaded. Defendants appealed.
Discussion
Forum non conveniens
Forum non conveniens is a common-law doctrine that presumes jurisdiction (Bader & Bader v Ford, 66 AD2d 642, 647 [1st Dept 1979], appeal dismissed 48 NY2d 649 [1979] ["[i]n applying the doctrine of forum non conveniens, . . . the existence of jurisdiction . . . is not dispositive. Forum non conveniens presumes the fact of jurisdiction . . ."]; Estate of Kainer v UBS AG, 175 AD3d 403, 403-404 [1st Dept 2019], affd 37 NY3d 460 [2021]; Shin-Etsu Chem. Co. v ICICI Bank Ltd., 9 AD3d 171, 176 [1st Dept 2004]). Thus, the initial question before this Court is whether Supreme Court had the discretion to deny the RCBC defendants' motion to dismiss the complaint on forum non conveniens grounds when it had already granted another defendant's motion to dismiss under the same doctrine[*6]. We answer this question in the affirmative and find that the RCBC defendants have not demonstrated that Supreme Court's denial was an improvident use of discretion.
CPLR 327(a) codifies the common-law doctrine of forum non conveniens and permits a court, in its discretion, to dismiss an action where "it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere" (Pahlavi, 62 NY2d at 478-479). CPLR 327(a) sets forth the standard for dismissal based on forum non conveniens as follows:
"When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."
A plaintiff's choice of forum should rarely be disturbed, even when plaintiff is not a New York resident (see OrthoTec, LLC v Healthpoint Capital, LLC, 84 AD3d 702, 702 [1st Dept 2011]). Thus, a defendant seeking dismissal on forum non conveniens grounds has a "heavy burden of establishing that New York is an inconvenient forum and that a substantial nexus between New York and the action is lacking" (Elmaliach v Bank of China Ltd., 110 AD3d 192, 208 [1st Dept 2013] [internal quotation marks omitted]).
In Pahlavi, the Court of Appeals listed several factors that a court should consider when exercising its discretion in determining whether to retain jurisdiction. These factors, none of which is controlling, include: (1) the burden on the New York courts; (2) potential hardship to the defendant; (3) the unavailability of an alternative forum in which plaintiff may bring suit; (4) whether both parties are nonresidents; and (5) whether the transaction from which the cause of action arose occurred primarily in a foreign jurisdiction (62 NY2d at 479). A court may also consider the location of potential witnesses and documents and potential applicability of foreign law (Shin-Etsu Chem. Co., Ltd., 9 AD3d at 177-178). Importantly, however, the doctrine is flexible and allows the court to make a discretionary determination based on the facts and circumstances of each case (Pahlavi, 62 NY2d at 479; Phat Tan Nguyen v Banque Indosuez, 19 AD3d 292, 294 [1st Dept 2005], lv denied 6 NY3d 703 [2006]).
Here, the gravamen of the forum non conveniens dispute is whether Supreme Court abused its discretion in denying defendants' motion to dismiss on forum non conveniens grounds based on the court's prior holding that New York was an inconvenient forum as to another defendant. Specifically, the RCBC defendants contend that this Court should exercise its independent discretion and dismiss the action, because Supreme Court's holding is an "about-face" that cannot be squared with its now-affirmed prior determination on forum non conveniens. We disagree.
When reviewing the [*7]motion court's exercise of discretion, we are "not limited to deciding that the nisi prius court abused its discretion, but may exercise such discretion independently" (Shin-Etsu Chem. Co., Ltd., 9 AD3d at 175 [internal quotation marks omitted]). However, we have long held that the motion court's determination should not be disturbed unless the court "improvidently exercised its discretion or failed to consider relevant factors" (Swaney v Academy Bus Tours of N.Y. Inc., 158 AD3d 437, 438 [1st Dept 2018]). Thus, our analysis focuses not on the result, but on whether the court thoroughly considered each of the relevant factors in making its determination, "even if we would have weighed those factors differently" (Estate of Kainer v UBS AG, 37 NY3d 460, 467 [2021]).
Here, Supreme Court's analysis details the factors it considered in making its determination, including defendants' role in the theft; the strong New York nexus of the case because the theft reached into an account at the NY Fed which was located in New York City (see Elmaliach, 110 AD3d at 209; see also Georgia-Pacific Corp. v Multimark's Intl., 265 AD2d 109, 112 [1st Dept 2000] [denying motion to dismiss on forum non conveniens grounds because significant payments and diverted funds took place in New York]; that the case was not a burden on New York courts because the Commercial Division was created to host complex international cases (see Robert L. Haig, 2 New York Practice, Commercial Litig. in New York State Courts § 1:7 [5th ed. 2020]); and that the case involved the application of New York law (see Bacon v Nygard, 160 AD3d 565, 566 [1st Dept 2018]).
While the court recognized that litigating in New York would be a potential hardship, it concluded that much of the relevant evidence was in electronic form, and although entities in both the United States and the Philippines had investigated some of the events, the resolutions of the investigations were available on the Internet. The court found the residency of the parties to be a neutral factor because RCBC and plaintiff were residents of the Philippines and Bangladesh, respectively. However, it held that plaintiff's selection of New York as a forum was entitled to some deference because plaintiff had held its international reserves in the NY Fed since 1972.
The court also considered the location of the witnesses and documentary evidence and found that this factor favored New York because the critical evidence of the fraudulent payment orders and the movement of the stolen funds into and out of correspondent accounts exists in New York. The court further considered that three of the four correspondent accounts are located in New York. Lastly, the court found that the Philippines was not a proper alternate forum because the action by RCBC against plaintiff in the Philippines had been dismissed, plaintiff otherwise had no connection to the Philippines, the filing fees would be significant, and jury trials are not available for civil [*8]matters in the Philippines (Wilson v Dantas, 128 AD3d 176, 187-188 [1st Dept 2015], affd 29 NY3d 1051 [2017] [in the context of forum non conveniens, the absence of the right to trial by jury in the proposed alternative forum causes a potential hardship to the plaintiff]).
In consideration of Supreme Court's analysis, we find the RCBC defendants' assertion that all Pahlavi factors point towards dismissal clearly without merit. Although defendants contend that the parties' not being residents of New York is the most significant factor to be considered, we have consistently held that residence is not the sole determinative factor in this analysis (see Thor Gallery at S. DeKalb, LLC v Reliance Mediaworks (USA) Inc., 131 AD3d 431, 432 [1st Dept 2015]; American BankNote Corp. v Daniele, 45 AD3d 338, 340 [1st Dept 2007]; Bank Hapoalim (Switzerland) Ltd. v Banca Intesa S.p.A.,26 AD3d 286, 287 [1st Dept 2006] [a defendant's "heavy burden" remains despite the plaintiff's status as a nonresident]). Thus, while it is undisputed that none of the parties reside in New York or the United States, it was not an abuse of discretion for Supreme Court to consider that plaintiff has maintained significant assets in the NY Fed for over 50 years in making its determination (see generally OrthoTec, LLC, 84 AD3d at 702 [unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed, even if plaintiff is not a New York resident]). Notably, these funds, the theft of which is the subject of this case, were not only stolen in New York, but it is alleged that several of RCBC's correspondent accounts in New York were used to facilitate the theft.
Further, it is true that some of the court's conclusions here do not align with its findings in the April 8, 2022 order granting EHL's motion to dismiss on the grounds of forum non conveniens (RCBC I). These inconsistencies, however, are explained by the record before us, which establishes they are a result of the court's determination that the underlying motions here focused on the initial theft of the $81 million from the NY Fed and the movement of the stolen funds to RCBC's correspondent banks in New York and Philadelphia (see Elmaliach, 110 AD3d at 209 [New York was proper forum when New York banking facilities were used to process wire transfers that injured Israeli plaintiffs]).[FN9]
With respect to defendant Wong, even if we were to assume, without deciding, that Supreme Court incorrectly determined that he waived forum non conveniens, his argument is unpersuasive for the same reasons outlined above. Despite Wong's contention that the causes of action against him are identical to the causes of action against EHL, retention of him individually in this action was not an abuse of discretion because plaintiff sufficiently alleges that he was involved in both the theft in New York and the money laundering.
Based on the foregoing, we find Supreme Court's determination to deny [*9]each defendant's motion to dismiss on forum non conveniens grounds was not an abuse of discretion. However, this determination only represents half of our inquiry, as a finding that it was proper for Supreme Court to deny defendants' motions to dismiss on forum non conveniens grounds does not equate to a finding that Supreme Court had personal jurisdiction over all RCBC defendants. Indeed, as discussed in further detail below, plaintiff has failed to establish personal jurisdiction over Reyes, Pineda, Capina, and Agarrado.
Personal Jurisdiction
In opposing a motion to dismiss pursuant to CPLR 3211(a)(8), plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate that jurisdiction over the defendants is warranted (see Coast to Coast Energy, Inc. v Gasarch, 149 AD3d 485, 486 [1st Dept 2017]; Copp v Ramirez, 62 AD3d 23, 28 [1st Dept 2009], lv denied 12 NY3d 711 [2009]; see also Fischbarg v Doucet, 9 NY3d 375, 381 n 5 [2007]). However, as "facts relevant to this determination are frequently in the exclusive control of the opposing party and will only be uncovered during discovery," plaintiff need only make a "sufficient start in demonstrating . . . the existence of personal jurisdiction" in responding to defendants' motion (Matter of James v iFinex Inc., 185 AD3d 22, 30 [1st Dept 2020]; see also American BankNote Corp., 45 AD3d at 340; Peterson v Spartan Indus., 33 NY2d 463, 466-467 [1974]).
Here, we find that plaintiff has sufficiently established personal jurisdiction over RCBC and the Tans. However, even accepting as true the allegations as set forth in the complaint, plaintiff's opposition papers, and according plaintiff the benefit of every favorable inference, it has failed to make a "sufficient start" in demonstrating long-arm "conspiracy" jurisdiction over the individual defendants. Because plaintiff asserts jurisdiction under CPLR 302 (a)(1), (2), and (3), respectively, we will discuss each subsection separately.
CPLR 302(a)(2)
CPLR 302(a)(2) provides for long-arm jurisdiction over a nondomiciliary who "in person or through an agent . . . commits a tortious act within the state . . . ." As relevant here, the agency requirement of section 302(a)(2) does not require a "formal agency relationship" to establish jurisdiction (Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]). Rather, plaintiff must "convince the court that [the in-state actor] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with knowledge and consent of the [out-of-state co-conspirator] and that [the out-of-state co-conspirator] exercised some control over [the in-state actor] in the matter" (id.).
This Court has long recognized that a conspiracy is a type of agency and that "[t]he acts of a co-conspirator may, in an appropriate case, be attributed to a defendant for the purposes of obtaining personal jurisdiction over that defendant" under CPLR 302(a)(2[*10]) (Reeves v Phillips, 54 AD2d 854, 855 [1st Dept 1976]). Here, however, the RCBC defendants not only argue that plaintiff has failed to allege a prima facie conspiracy, but also that Supreme Court erred in finding that an agency relationship existed between them and the alleged co-conspirators when determining that it had personal jurisdiction under a conspiracy-based theory of jurisdiction.
Before addressing plaintiff's argument that New York has conspiracy jurisdiction over defendant, we must first consider defendants' argument that plaintiff fails to state a claim for conspiracy (see Mosaic Caribe, Ltd. v AllSettled Group, Inc., 117 AD3d 421, 424 [1st Dept 2014] [personal jurisdiction does not exist over a nondomiciliary based on a conspiracy unless there is a valid conspiracy claim]). "[T]o establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury" (Abacus Fed. Sav. Bank v Lim, 75 AD3d 472, 474 [1st Dept 2010] [internal quotation marks omitted]). As relevant here, defendants contend that plaintiff has failed to allege a prima facie case of conspiracy because the complaint contains bare, conclusory allegations which are insufficient to establish an agreement between the co-conspirators and fails to allege defendants' intentional participation in the furtherance of a plan or purpose. We disagree.
Contrary to defendants' assertions, we find that the complaint contains factual allegations from which such an agreement can be inferred. Namely, after the initial theft of plaintiff's funds, the money was laundered through RCBC accounts by RCBC employees (see FIA Leveraged Fund Ltd. v Grant Thornton LLP, 150 AD3d 492, 495 [1st Dept 2017]; Abrahami v UPC Constr. Co., 176 AD2d 180 [1st Dept 1991]). Further, defendants' intentional participation in furtherance of the conspiracy can be inferred by the overt acts alleged to have been taken by them—i.e., providing the routing numbers for RCBC's correspondent accounts, transferring the funds to fictious accounts, and converting plaintiff's funds to pesos (see FIA Leveraged Fund Ltd., 150 AD3d at 495; Emerald Asset Advisors, LLC v Schaffer, 895 F Supp 2d 418, 432 [ED NY 2012]).
This, however, is not the end of our inquiry as to establish personal jurisdiction over a co-conspirator based on a conspiracy theory of jurisdiction under CPLR 302(a)(2), plaintiff must also sufficiently allege that the conspiracy involved the commission of an overt tortious act in New York and that defendants were part of the conspiracy (see Lawati v Montague Morgan Slade Ltd., 102 AD3d 427, 428-429 [1st Dept 2013]).
As relevant here, plaintiff contends that the theft of $81 million from its bank account at the NY Fed constitutes a tortious act within this [*11]state. In SOS Capital v Recycling Paper Partner of PA, LLC (220 AD3d 25, 33, 37 [1st Dept 2023]), we reiterated that personal jurisdiction under CPLR 302(a)(2) requires that a defendant's act or omission occur while a defendant or its agent was physically present in the state. However, we maintained a narrow exception to this rule, and reaffirmed that "a financial fraud tort can be deemed to have occurred within this state, when neither a defendant nor its agents had physical contacts within the boundaries of New York . . . , where an out-of-state defendant uses a modern-day financial system and a New York based bank account to commit a financial fraud tort within the boundaries of New York" (id. at 37; see also FIA Leveraged Fund Ltd., 150 AD3d at 495-496 ["[u]sing a New York bank account for a fraudulent scheme constitutes a tort within New York"]; Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 187 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997]). Therefore, there is no question that the theft of the funds from an account plaintiff has held in New York for nearly 50 years and through which it conducts the majority of its international monetary transactions is a financial fraud tort within this state.
However, as noted above, for the purposes of conspiracy-based personal jurisdiction in New York, plaintiff must also allege specific facts warranting the inference that each defendant was a member of the conspiracy that resulted in the tortious act in New York (see In re Sumitomo Copper Litig., 120 F Supp 2d 328, 338-339 [SD NY 2000]; see also Lawati, 102 AD3d at 428-429). That is, the complaint must sufficiently allege the "requisite relationship between the defendant and its New York co-conspirators . . . by . . . showing that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant" (Lawati, 102 AD3d at 428; see also HH Trinity Apex Invs. LLC v Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., 210 AD3d 474, 475-476 [1st Dept 2022]; Barbato v Giacin, 188 AD3d 556, 557 [1st Dept 2020]). As to the third requirement, "to make a prima facie showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation" (Coast to Coast Energy, Inc., 149 AD3d at 487 [internal quotation marks omitted]).
With regard to RCBC, the complaint sufficiently states its involvement in the conspiracy to establish conspiracy based personal jurisdiction under CPLR 302(a)([*12]2). First, the allegations support the inference that RCBC was aware of the effects of its activity in New York. Specifically, the complaint alleges that RCBC's correspondent accounts in New York were used in the initial theft, that the funds were transferred from RCBC's New York correspondent accounts to RCBC's fictitious accounts, and despite RCBC having notice of the suspicious activity, the funds were sent to co-conspirators to be laundered. Second, the complaint plausibly alleges that the North Korean hackers acted to benefit RCBC. It alleges that the stolen funds were sent from RCBC's correspondent accounts to the fictitious accounts, whereby RCBC's treasury department, through its department head, Raul Tan, converted the funds from dollars to pesos, thereby benefitting RCBC by virtue of transaction fees. Third, the complaint not only alleges that RCBC was aware of the tortious acts in New York, but it is also reasonable to infer that the hackers were working at its direction or on its behalf based on the allegations that RCBC was an integral part of, and direct participant in, the theft (see Lawati, 102 AD3d at 428).
Plaintiff has also sufficiently alleged Raul Tan's and Lorenzo Tan's membership in the conspiracy. As to the first requirement, the complaint alleges in detail how, as senior management, the Tans were aware of the conspiracy based on Lorenzo Tan's contacts with defendant Wong. Specifically, it alleges that Lorenzo Tan was a longtime friend of Wong and advised RCBC personnel to "take care of" Wong as a client of RCBC. The complaint further alleges Lorenzo Tan was not only aware the fictitious accounts were opened, but also chose to take no action, despite knowing that large amounts of money would be placed into these accounts. Similarly, it is alleged that Raul Tan knew the funds had come from New York because he discussed the transfers and the respective holds with senior personnel.
Turning to the second requirement, whether the activities in New York benefitted the Tans, we find that the complaint contains factual allegations from which such benefit can be inferred. Namely, it alleges that managers and officials at RCBC were motivated by the prospect of significant fees and commissions, including those earned through the foreign exchange transactions completed by RCBC's Treasury Department. Thus, it follows that Lorenzo Tan, as President and CEO, stood to benefit financially from the fees RCBC generated through the exchange transactions, and Raul Tan, who was directly involved with the conversion of the funds to pesos, also stood to benefit.
As to the third requirement, it is also reasonable to infer that the hackers were working at the Tans' direction, under their control, or on their behalf. As noted above, the complaint alleges that the Tans were aware of the torts being committed by the hackers in New York (see Lawati, 102 AD3d at 428). It further alleges that Lorenzo Tan was aware there were going to be large infusions [*13]of funds into the fictitious accounts and that Raul Tan, as a member of senior management, directed the hold on plaintiff's funds be lifted shortly after it was put in place and despite being advised of the suspicious transactions from the Deputy Head of RCBC's Operations Group, thereby allowing plaintiff's funds to be routed through the fictitious accounts.
While the complaint also contains more generalized allegations that senior RCBC personnel signed-out RCBC's SWIFT server to prevent the timely receipt of the Bank's stop payment instructions, it specifically alleges that Raul Tan was involved with the misleading SWIFT message which indicated that RCBC had frozen the accounts in question but which failed to disclose that the funds had already been transferred to other RCBC accounts. Lastly, the complaint alleges that Raul Tan was involved with the conversion of the stolen funds to pesos noted above, despite knowing of the suspicious nature of the funds and the bank's request to recall them.
Based on the foregoing, we find that sufficient facts warranting the inference of a conspiracy and RCBC and the Tans' membership therein, have been demonstrated. However, the complaint does not sufficiently allege conspiracy jurisdiction over Reyes, Pineda, Capina, and Agarrado because there is no basis to infer that the theft in New York was to their benefit or that the hackers acted at their behest. Rather, the complaint simply alleges that Reyes, Pineda, and Capina allowed the hold on plaintiff's funds to be lifted at Raul Tan's direction and consulted with Deguito about the fictitious accounts. Similarly, the complaint only alleges that Agarrado signed off on the opening of the fictitious accounts created by Torres and Deguito prior to the theft occurring.
While plaintiff attempts to read the control element out of the conspiracy membership analysis, our holding in Wimbledon Fin. Master Fund, Ltd. v Weston Capital Mgt. LLC (160 AD3d 596 [1st Dept 2018]) does not stand for the proposition that conspiracy membership can be established without showing some extent of control over the in-state actor. Rather, in Wimbledon we simply found that the control element could be met by an out-of-state defendant's receipt of "hush money," because it allowed for the reasonable inference that they exerted control to the extent that the fraud could not have been completed without their acquiescence to the misconduct (id. at 596-597).
However, no such inference can be made here with respect to the individual defendants. Simply put, plaintiff failed to allege facts sufficient to support New York conspiracy jurisdiction for these defendants under CPLR 302(a)(2) (see HH Trinity Apex Invs., 210 AD3d at 475-476 [plaintiffs failed to allege any facts to show that defendants benefitted from alleged extortion to support conspiracy jurisdiction under CPLR 302(a)(2)]; Barbato, 188 AD3d at 557 [no basis to infer that tortious actions benefited the out of state defendant or that that [*14]the actions were taken at the behest of the out of state defendant]; FIA Leveraged Fund Ltd., 150 AD3d at 496 [additional Lawati (102 AD3d at 428) factors not met for sibling company because it is not logical to infer that co-conspirator acted under its control]; Bluewaters Communications Holdings, LLC v Ecclestone, 122 AD3d 426, 427 [1st Dept 2014] [dismissal of claims against nondomiciliary defendants where the complaint did not allege that the New York conspirator acted "at the direction, under the control, at the request, or on behalf of the personal jurisdiction defendants"]).
CPLR 302(a)(1)
The jurisdictional inquiry under CPLR 302(a)(1) is a two-pronged analysis. "[U]nder the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions" (Rushaid v Pictet & Cie, 28 NY3d 316, 323 [2016]). Here, the crux of the RCBC defendants' argument is that the North Korean hackers' single use of the correspondent accounts was insufficient to establish that the RCBC defendants transacted business in New York under CPLR 302(a)(1). In addition, the Tans and the individual defendant's all assert that the complaint fails to allege that they were linked to the correspondent accounts.
CPLR 302(a)(1) permits personal jurisdiction over a nondomiciliary "who, in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services within the state." It is a single act statute where "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006], cert denied 549 US 1095 [2006], quoting Kreutter, 71 NY2d at 467; Copp, 62 AD3d at 28). Therefore, if "a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State" (Deutsche Bank Sec., Inc., 7 NY3d at 71, quoting Kreutter, 71 NY2d at 466).
The determination of what facts constitute "purposeful availment" under CPLR 302(a)(1) "is an objective inquiry, [which] always requires a court to closely examine the defendant's contacts for their quality" (Rushaid, 28 NY3d at 323 [internal quotation marks and citation omitted]; Fischbarg, 9 NY3d at 380) to determine whether defendant has "avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (id. [internal quotation marks omitted]). Thus, we must ensure that the quality of defendants' contacts with the correspondent bank demonstrates "more than banking by happenstance[*15]" (Rushaid, 28 NY3d at 327).
Here, plaintiff sufficiently alleges that RCBC maintains correspondent accounts in New York and has for 60 years. The record on appeal also demonstrates that RCBC admitted that it uses these correspondent banks to facilitate commercial and trade payments (inward and outward remittances) in US dollars and that its correspondent banks in New York are strictly used to route funds out of the United States (see Licci v Lebanese Can. Bank, SAL, 20 NY3d 327, 339-340 [2012]; see also Averbach v Cairo Amman Bank, 2020 WL 486860, *7, 2020 US Dist LEXIS 10902 [SD NY, Jan. 21, 2020, No. 19CV0004 (GHW/KHP)] [deposits and movement of funds through correspondent accounts in New York is transacting business]). Thus, the quality of RCBC's contacts established a transaction of business in New York.
In reaching this conclusion, however, we are not suggesting that a defendant's maintenance of a correspondent account in New York is sufficient to exercise personal jurisdiction (see Licci, 20 NY3d at 336). Rather, in the case before us, the correspondent accounts were integral to the alleged theft, as they were used to effectuate the transfer of plaintiff's funds out of New York and to the Philippines, thereby satisfying the second prong of the analysis. Further, as the complaint alleges, the hackers' first attempts to move the money out of the NY Fed were unsuccessful because they lacked the routing information for RCBC's correspondent accounts. However, once the routing information was again requested from and provided by RCBC, the transfers of the funds from the NY Fed to the correspondent accounts were processed. Thus, the "transaction and claim are not merely coincidental" (Rushaid, 28 NY3d at 323 [internal quotation marks omitted]), but rather the actions were purposeful and necessary to effectuate the alleged theft.
We are presented with much different circumstances when discussing CPLR 302(a)(1) jurisdiction for Capina, Pineda, and Agarrado. With respect to these defendants, the complaint fails to allege that they are linked to the correspondent accounts in New York. There are also no allegations that these defendants were principal actors in the transactions in New York (cf. Rushaid, 38 NY3d at 320 [individual defendants were employees who directed funds through the correspondent accounts]). Instead, plaintiff relies solely on the alleged actions of these defendants in establishing the fictitious accounts, removing the hold, and allowing the movement through other accounts—allegations that are insufficient to establish personal jurisdiction for these defendants under CPLR 302(a)(1).
Although Supreme Court's order does not reflect a finding under CPLR 302(a)(1) for Reyes [FN10] or the Tan's, these defendants argued below that plaintiff has not established personal jurisdiction under this subsection. On appeal, these defendants renew their contention that personal jurisdiction has not been established. For the same reasons noted above [*16]as to Capina, Pineda, and Agarrado, we also find that the allegations in the complaint are insufficient to establish personal jurisdiction under CPLR 302(a)(1) as to these defendants.
CPLR 302(a)(3)
The RCBC defendants also argue that personal jurisdiction is not available under CPLR 302(a)(3) because the situs of the injury was not New York. Specifically, they contend that Supreme Court's determination incorrectly focused on where the damages occurred rather than what defendants consider to be the original critical events—the opening of the fictitious accounts in the Philippines and the hack of plaintiff's computers in Bangladesh. Plaintiff argues to the contrary, claiming that the injury occurred when the money was stolen from its NY Fed account in New York. We agree with plaintiff.
CPLR 302(a)(3)(ii)
CPLR 302(a)(3) provides for personal jurisdiction for any nondomiciliary who, in person or through an agent commits a tortious act outside of the state causing injury to person or property within the state, if he or she:
"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or"
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."
To rely on CPLR 302(a)(3)(ii) jurisdiction, a plaintiff must show that: (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce (see LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214 [2000]; Penguin Group (USA) Inc. v American Buddha, 16 NY3d 295, 302 [2011]). Here, there is no dispute that the complaint alleges RCBC committed a tort outside of New York by setting up the fictitious accounts that were used to facilitate the theft. RCBC's main contention, however, is that plaintiff has not established that the tortious act caused an injury to a person or property in New York.
It has long been the position of this Court that, "[i]n the context of a commercial tort, where the damage is solely economic, the situs of commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred" (CRT Invs., Ltd. v BDO Seidman, LLP, 85 AD3d 470, 471-472 [1st Dept 2011]). As relevant here, RCBC contends that the "original critical events" were the original hacking of plaintiff's computer system and the setting up the fictitious accounts—events which defendant claims did not cause injury in New York. This argument is unavailing.
In support of its contention, defendant relies on this Court's [*17]holdings in Quad Capital Portfolio A LLC v AbbVie Inc. (201 AD3d 449, 450 [1st Dept 2022]), CRT Invs., Ltd. (85 AD3d at 471-472) and HH Trinity Apex Invs. LLC (210 AD3d at 476). However, these cases do not involve the theft of funds in New York, but, rather, stand for the proposition that personal jurisdiction cannot be obtained under CPLR 302(a)(3) based solely on the fortuitous consequence of New York being the situs where the economic injury is felt, if there is no other nexus to the jurisdiction.
While plaintiff alleges that defendant created fictitious accounts outside of New York which were used to facilitate the theft of plaintiff's funds within New York, the record clearly demonstrates that as it pertains to CPLR 302(a)(3)(ii) jurisdiction, the original and direct situs of plaintiff's alleged injury was fulfilling the fraudulent payment orders in New York. That is, the very act of stealing the funds from plaintiff's NY Fed account and transferring them to the RCBC correspondent accounts in New York is the injury. Because these transfers occurred inside of New York and involved New York assets, and because the remaining factors have not been sufficiently contested, we find that plaintiff has sufficiently alleged that the situs of the injury is New York (see Gabriel Capital, L.P. v CAIB Investmentbank AG, 28 AD3d 376, 377 [1st Dept 2006], lv dismissed 7 NY3d 922 [2006]; cf. USA Sevens LLC v World Rugby Ltd., 191 AD3d 620, 620-621 [1st Dept 2021]).
However, plaintiff has failed to sufficiently allege that the individual defendants were subject to New York jurisdiction under CPLR 302(a)(3)(ii). Plaintiff frames its arguments concerning this subsection in relation to all RCBC defendants based on what appears to be its contention that the individual defendants are subject to New York jurisdiction because they conspired with RCBC and the North Korean hackers. However, as noted above, plaintiff has failed to show that these defendants were members of the conspiracy and thus conspiracy jurisdiction cannot be the basis of jurisdiction under this subsection (see HH Trinity Apex Investments LLC, 210 AD3d at 475). Because plaintiff has otherwise failed to establish that these defendants expected or should have expected their conduct to have consequences in New York or that they solicited business or derived substantial revenue from New York (see LaMarca, 95 NY2d at 214-215), it has failed to allege a basis for personal jurisdiction under this subsection.
CPLR 302(a)(3)(i)
Plaintiff also asserts jurisdiction over RCBC under CPLR 302(a)(3)(i) based on its contention that defendant has maintained New York correspondent accounts for 60 years that allowed it to deliver dollar services to its customers. Although RCBC seemingly admits to this allegation by stating that it maintains several correspondent accounts in New York to facilitate commercial and trade payments in US dollars for its customers and has done so for many years, it contends that finding [*18]jurisdiction under this provision conflicts with the Court of Appeals holding in Rushaid (28 NY3d 316). However, it fails to explain how the Court of Appeals discussion of CPLR 302(a)(1) in Rushaid, has any direct bearing on the application of CPLR 302(a)(3)(i) here. Without more, we find defendant's argument unavailing, as plaintiff adequately alleges that defendant committed a tort outside of New York and that it maintained correspondent accounts in New York for 60 years to provide services to customers.
Due Process
Although each subsection of CPLR 302 may, on its own, confer personal jurisdiction upon a nondomiciliary, we must conduct a further inquiry to determine whether the exercise of jurisdiction comports with due process (see Williams v Beemiller, Inc., 33 NY3d 523, 528 [2019]). As set forth in International Shoe Co. v Washington (326 US 310, 316 [1945]), due process requires that a nondomiciliary have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (internal quotation marks omitted). Thus, due process is satisfied where the nondomiciliary has minimum contacts with New York and based on those contacts, defendant "should reasonably anticipate being 'haled to court'" here (LaMarca, 95 NY2d at 216, citing World-Wide Volkswagen Corp. v Woodson, 444 US 286, 297 [1980]).
As relevant here, both RCBC's and the Tans' intentional participation in the conspiracy to divest plaintiff's funds at the NY Fed and use of RCBC's New York correspondent bank accounts to do so, satisfy the minimum contacts component of the due process inquiry. We recognize, of course, that RCBC is a foreign entity, and the Tans are foreign nationals, but find that modern technologies greatly reduce the burden of litigation in New York (see Licci ex rel. Licci v Lebanese Can. Bank, SAL, 732 F3d 161, 174 [2d Cir 2013]). We also find that New York has an interest in adjudicating the dispute, as the alleged theft was facilitated using New York's banking system, and when considering the remaining factors, maintaining a lawsuit here does not "offend traditional notions of fair play and substantial justice" (see Rushaid, 28 NY3d at 331). Given the extent and nature of RCBC's and the Tans' alleged involvement in the conspiracy, we find that jurisdiction over these defendants comports with due process.
Failure to State a Claim
In reviewing a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211(a)(7), "we must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every reasonable inference, and determine only whether the facts, as alleged fit within any cognizable legal theory" (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 289 [1st Dept 2003]). In making this determination, we are "not authorized to assess the merits of the complaint or [*19]any of its factual allegations" (Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003]). We can, however, "freely consider affidavits submitted by plaintiff to remedy any defects in the complaint to defeat defendant's motion" (Leon v Martinez, 84 NY2d 83, 88 [1994]). 
Affording the factual allegations set forth in the complaint every favorable inference, we find that the causes of action for money had and received, unjust enrichment, conspiracy to commit trespass to chattels, and fraud/fraudulent concealment, are sufficiently established by the pleadings.
However, the allegations sounding in conversion are insufficiently pleaded. According to the allegations in the complaint, plaintiff's funds went to correspondent banks, then to fictitious accounts. Once plaintiff's funds were sent to RCBC's correspondent accounts in New York and Philadelphia, they were no longer segregated but commingled with other deposits already in the accounts, and once moved into the fictitious accounts set up by certain of RCBC's employees they were commingled further. Because the funds were no longer specifically identifiable, as required for a conversion claim, the causes of action sounding in conversion should have been dismissed (see SH575 Holdings LLC v Reliable Abstract Co, L.L.C., 195 AD3d 429, 430 [1st Dept 2021]; Thys v Fortis Sec. LLC, 74 AD3d 546, 547 [1st Dept 2010]).
Conclusion
Accordingly, the order of the Supreme Court, New York County (Andrea P. Masley, J.), entered January 17, 2023, which, insofar as appealed from as limited by the briefs, denied the motions of defendants RCBC, Romualdo Agarrado, Nestor Pineda, Ismael Reyes, Brigette Capina, Raul Victor Tan, and Lorenzo Tan to dismiss the complaint as against them under CPLR 327(a), CPLR 3211(a)(7), and CPLR 3211(a)(8), and denied defendant Kim Sin Wong's motion to dismiss the complaint as against him under CPLR 327(a), should be modified, on the law, defendants Agarrado, Pineda, Reyes, and Capina's motions to dismiss for lack of in personam jurisdiction granted, the causes of action for conversion/theft/misappropriation (first cause of action), aiding and abetting conversion/theft/misappropriation (second cause of action), and conspiracy to commit conversion/theft/misappropriation (third cause of action) dismissed, and otherwise affirmed, without costs.
Order, Supreme Court, New York County (Andrea P. Masley, J.), entered January 17, 2023, modified, on the law, defendants Agarrado, Pineda, Reyes, and Capina's motions to dismiss for lack of in personam jurisdiction granted, the causes of action for conversion/theft/misappropriation (first cause of action), aiding and abetting conversion/theft/misappropriation (second cause of action), and conspiracy to commit conversion/theft/misappropriation (third cause of action) dismissed, and otherwise affirmed, without costs.
Opinion by Pitt-Burke, J. All concur.
Webber, J.P., Scarpulla, Pitt-Burke, Rosado, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION [*20]AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 29, 2024

Footnotes

Footnote 1: SWIFTLIVE is the network used to process SWIFT messages.

Footnote 2: Defendant Wong is also a Philippine national.
Footnote 3: These deposits included: (1) $6,000,039.12 to the fictitious Cruz account, through RCBC's NY correspondent account at Wells Fargo; (2) $30,000,039.12 to the fictitious Lagrosas account, through RCBC's NY correspondent account at the Bank of New York Mellon; (3) $20,000,000.00 to the fictitious Vergara account, through RCBC's Philadelphia correspondent account at Wells Fargo; and (4) $25,001,583.88 to the fictitious Vazquez account, through RCBC's NY correspondent account at Citibank.
Footnote 4: Philrem is a Philippine corporation with its principal place of business in Manila, co-owned by defendants Salom and Michael Bautista, Philippine nationals who were indicted in the money laundering matter.

Footnote 5: On January 31, 2019, plaintiff commenced an action in the Southern District of New York, alleging Racketeer Influenced and Corrupt Organizations Act (RICO) and state law claims. On March 20, 2020, the court (Lorna G. Schofield, J.) granted the motion to dismiss the RICO claim, declined to exercise jurisdiction over the state law claims, and denied the motions by RCBC, BRHI, EHL, and Wong to dismiss for lack of subject matter jurisdiction and under forum non conveniens grounds (Bangladesh Bank v Rizal Commercial Banking Corp., 2020 WL 1322275, 2020 US Dist LEXIS 49246 [SD NY, Mar. 20, 2020, 19-CV-983 (LGS)], appeal withdrawn 2020 WL 6145040 [2d Cir Aug. 3, 2020]).
Footnote 6: Other than the cause of action for fraud, which was only against the RCBC defendants, the causes of action were asserted against all defendants.

Footnote 7: The complaint's introductory paragraphs state that $101 million was stolen, but the pleading explains that one transaction involving the theft of $20 million was reversed and the funds returned to plaintiff.

Footnote 8: Supreme Court's decision also references defendants Capina, Pineda, and Agarrado's arguments concerning CPLR 302(a)(1). However, the decision does not make an objective finding as to this subsection for these defendants.

Footnote 9: Supreme Court's analysis in RCBC I focused on different defendants and turned on their involvement in the money laundering aspect of the scheme, which took place in accounts and casinos in the Philippines.

Footnote 10: Although Reyes is an individual defendant as that term has been defined within this opinion, because he filed his underlying motion separately from Capina, Pineda, and Agarrado, Supreme Court's finding as to him under subsection 302(a)(1) are referenced separately.